Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, #140
Scottsdale, AZ 85260

Telephone: (602) 482-4300
Facsimile:   (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Cindi Staten*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Cindi Staten,<br><br>           Plaintiff,<br><br>      v.<br><br>Cigna Short-Term Disability Plan; Cigna Basic and Supplemental Long-Term Disability Plan; Cigna Corporation; Life Insurance Company of North America,<br><br>           Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Cindi Staten (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

### *Jurisdiction*

1.  Jurisdiction of the Court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits. In addition, this action may be brought before this Court pursuant to 28

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2. Plaintiff is a resident of Coconino County, Arizona.

3. Upon information and belief, Defendant Cigna Corporation (hereinafter referred to as the "Company") sponsored, subscribed to and administered an Employee Welfare Benefit Plan within the meaning of 29 U.S.C. §1002(1) which was self-insured. Upon information and belief, the name of the entity is the Cigna Short-Term Disability Plan (hereinafter referred to as the "STD Plan") which was created to provide the Company's employees with welfare benefits.

Upon information and belief, the STD Plan states the STD benefits are paid through the regular pay cycle, at a percentage of the employee's base salary, dependent upon the length of their accumulated service with the Company.

4. Upon information and belief, the Company or STD Plan may have delegated responsibility for the STD Plan and/or claim administration to an entity named the Life Insurance Company of North America (hereinafter referred to as "LINA") which is a wholly owned subsidiary of the Company. Plaintiff believes that as it relates to her claim, LINA functioned as the Plan and/or Claim Administrator; however, pursuant to the relevant ERISA regulation, the Company and/or STD Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in LINA.

5. Upon information and belief, the Company, STD Plan or LINA operated under a structural conflict of interest in that one or several of those entities assumed dual roles as the claims administrator and payor of benefits; *to wit*, if one of the aforementioned

2

1  entities approved Plaintiff's claim a Company owned entity was also liable for payment of
2  benefits. [1]

3   6.  The Company or STD Plan's conflict of interest may have also led it to retain LINA to be the claims administrator in that the Company or STD Plan self insured the aforementioned STD benefits and would directly benefit financially if LINA administered the STD Plan's claims in a parsimonious manner. LINA's conflict of interest exists in that it is a wholly owned subsidiary of the Company and also because if it maintained a parsimonious approach to managing the STD Plan's claims it would benefit by being viewed favorably by the Company or STD Plan who saved money as a result by incurring a lower claims experience with fewer monetary contributions to pay the STD Plan benefits. LINA also operated under a conflict of interest in Plaintiff's STD claim because LINA fully insured the Company's LTD Policy and LINA saved money by not paying Plaintiff's LTD benefits when it terminated her STD benefits.

6.  Upon information and belief, the Company also sponsored, administered and purchased a group long term disability insurance policy which was fully insured by LINA. The specific LINA group long term disability policy is known as Group Policy No.: FLK0546200 (hereinafter referred to as the "LTD Policy"). The Company's purpose in sponsoring, administering and purchasing the LTD Policy was to provide long term disability insurance for its employees. Upon information and belief, the LTD Policy may

---

[1] In *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 868 (9th Cir. 2008) the court held, "In Bruch, the Supreme Court instructed us to "weigh[ ]" a fiduciary's "conflict of interest" as "a 'facto[r] in determining whether there is an abuse of discretion.' " 489 U.S. at 115 (quoting Restatement (Second) of Trusts § 187 cmt. d (1959)). *MetLife labors under such a conflict of interest: It both decides who gets benefits and pays for them, so it has a direct financial incentive to deny claims.* See Langbein, supra, at 1321 ("The danger pervades the ERISA-plan world that a self-interested plan decision maker will take advantage of its license under Bruch to line its own pockets by denying meritorious claims.")(emphasis added).

3

have been included in and part of an employee benefit plan, specifically named the Basic and Supplemental Long-Term Disability Plan (hereinafter referred to as the "LTD Plan") which may have been created to provide the Company's employees with welfare benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

7. Upon information and belief, LINA functioned as the claims administrator of the LTD Policy; however, pursuant to the relevant ERISA regulation, the Company and/or the LTD Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in LINA.

8. Upon information and belief, Plaintiff believes LINA operated under a conflict of interest in evaluating her long term disability claim due to the fact that it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled as well it was the payor of benefits; *to wit*, LINA's conflict existed in that if it found Plaintiff was disabled, it was then liable to pay for her LTD benefits.

9. The Company, LINA, LTD Plan and STD Plan conduct business within Coconino County and all events giving rise to this Complaint occurred within Coconino County.

***Venue***

10. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

***Nature of the Complaint***

11. Incident to her employment, Plaintiff was a covered employee pursuant to the STD and LTD Plans and relevant LTD Policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plans and policy

4

pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as any other employee benefits she may be entitled to as a result of being found disabled, including but not limited to a waiver of any premiums due on a life insurance policy, company provided health insurance benefits (coverage), and company provided retirement, pension and/or 401k contributions.

12. After working for the Company as a loyal employee, Plaintiff became disabled due to serious medical conditions and was unable to work in her designated occupation as a Customer Service Representative on or about May 13, 2013.

13. Following her disability, Plaintiff applied for STD benefits under the relevant STD Plan. The relevant STD Plan provides the following definition of disability:

"You have a covered disability under the STD Plan if, because of a medical condition related to an accident, illness or pregnancy:

- you are unable to perform the essential functions of your current or a similar role for at least six consecutive scheduled work days;
- the essential duties that you cannot perform cannot be reassigned to another person in order to accommodate your return to work;
- you cannot, based on your lack of work experience or on work restrictions related to your medical conditions, be reassigned to another position with 15% of the market value of your current role; and
- your physician provides objective medical evidence to support his or her assessment of your medical condition."

14. Plaintiff also applied for LTD benefits under the relevant LTD Policy, which provides the following definition of disability:

"The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is unable to perform all the material duties of his or her Regular Occupation or a Qualified Alternative.

After Long Term Disability Benefits have been payable for 18 continuous months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is unable to perform all the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience."

5

15. In support of her claim for short term disability benefits, Plaintiff submitted medical records to LINA from her treating physicians which supported her allegation she met the STD Plan's relevant definition of disability and her claim for short term disability benefits was approved. LINA paid Plaintiff short term disability benefits through September 25, 2013.

16. LINA informed Plaintiff in a letter dated November 7, 2013 it was terminating her short term disability benefits beyond September 25, 2013.

17. In a letter dated October 23, 2013, LINA informed Plaintiff it was in receipt of her application for long term disability benefits and was reviewing her claim at that time.

18. In a letter dated October 31, 2013, LINA informed Plaintiff it was denying her claim for long term disability benefits.

19. Plaintiff timely appealed LINA's decision to terminate her short term disability benefits beyond September 25, 2013 and its denial of her claim for long term disability benefits and submitted to LINA additional medical, vocational and lay witness evidence which demonstrated she met any definition of disability set forth in the relevant STD Plan and LTD Policy.

20. In support of her appeal, Plaintiff submitted to LINA a report authored by a qualified physician who opined after evaluating Plaintiff, "…it is my opinion that [Plaintiff] has functional work restrictions and limitations which preclude her not only from working in her prior occupation as a Customer Service Representative, but potentially from most or all typically available occupations as well…."

21. In support of her appeal, Plaintiff submitted to LINA a narrative letter dated January 21, 2014 from her treating medical provider who opined, "As of May 2013, in my

6

professional opinion, it would be reasonable to assume [Plaintiff] was unable to work in any occupation…"

22. Further supporting her appeal, Plaintiff submitted a vocational report from a certified vocational expert dated February 27, 2014, who after reviewing Plaintiff's medical evidence and interviewing Plaintiff concluded, "From a vocational perspective, [Plaintiff] is unable to maintain any level of functioning commensurate with competitive employment."

23. In addition to the medical records and reports submitted to LINA, Plaintiff submitted a sworn affidavit regarding her medical condition, her inability to work in any occupation and that her medical condition had not improved in any meaningful way since her date of disability.

24. As part of its review of Plaintiff's claims for short and long term disability benefits, LINA obtained a medical records only "paper review" of Plaintiff's claim from Dr. Kathleen Seibel.

25. Upon information and belief, Plaintiff believes Dr. Seibel may be a long time medical consultant for the disability insurance industry and LINA. As a result, Plaintiff believes Dr. Seibel may have an incentive to protect her own consulting relationships with the disability insurance industry and LINA by providing medical records only paper reviews, which selectively review or ignore evidence such as occurred in Plaintiff's claims, in order to provide opinions and report(s) which are favorable to LINA and supported the denial of Plaintiff's claims.

26. In a letter dated April 2, 2014, in order to engage LINA in a dialogue so she could perfect any alleged deficiencies in her claims, Plaintiff requested a complete copy of any and all medical records only "paper reviews" from LINA and the opportunity to provide

these reviews to her medical professionals for their response prior to LINA rendering a determination in her claims.

27. In letters dated July 17, 2014, LINA notified Plaintiff it had denied her claims for both short and long term disability benefits

28. Prior to its July 17, 2014 denial letters, LINA never shared with Plaintiff the report authored by Dr. Seibel and never engaged Plaintiff or her treating medical providers in a dialogue so she could respond to the report and perfect her claims.  LINA's failure to provide Plaintiff with the opportunity to respond to the report precluded a full and fair review pursuant to ERISA and is a violation of Ninth Circuit case law.

29. In LINA's July 17, 2014 denial letters it informed Plaintiff she had the right to bring a legal action for benefits pursuant to ERISA.

30. Upon information and belief, LINA's July 17, 2014 denial letters confirm it failed to provide a full and fair review pursuant to ERISA because it completely failed to credit, reference, consider, and/or selectively reviewed and de-emphasized most, if not all of Plaintiff's reliable evidence.

31. From the time LINA originally evaluated Plaintiff's claim for short term disability benefits through the present, Plaintiff has remained unable to engage in any occupation due to her medical conditions and resulting limitations.

32. Upon information and belief, LINA denied Plaintiff a lawful, full and fair review pursuant to ERISA for various reasons including but not limited to: arbitrarily rejecting Plaintiff's reliable evidence, failing to credit and consider all evidence submitted by Plaintiff or de-emphasizing the medical evidence supporting Plaintiff's disability and emphasizing evidence which suggested an opposite conclusion, disregarding Plaintiff's self-reported symptoms, failing to consider all the diagnoses and/or limitations set forth in her medical evidence as well as the combination of those diagnoses and impairments and failing

to obtain an Independent Medical Examination when the STD Plan and LTD Policy allowed one and Plaintiff's disabling conditions could not be reasonably or fully evaluated by reviewing only her medical records, failing to consider the side effects Plaintiff's medications would have on her ability to work in her occupation.

33. LINA failed to adequately investigate her claims and failed to engage Plaintiff and/or her treating medical professionals in a dialogue during the appeal with regard to what evidence was necessary so Plaintiff could perfect her appeal and claims. LINA's failure to adequately investigate the claims and to engage Plaintiff in this dialogue, particularly since it approved her short term disability claim for a period of time and then terminated benefits without any improvement in her medical conditions, or to obtain the evidence it believed was important to assist in perfecting the claims is a violation of ERISA and Ninth Circuit case law and a reason she did not receive a full and fair review.

34. In evaluating Plaintiff's claims on appeal, Defendants had an obligation pursuant to ERISA to administer it "solely in her best interests and other participants" which it failed to do.[2]

35. Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest and any individual who reviewed her claims and the Court may properly weigh and consider extrinsic evidence regarding the nature, extent and effect of *any* conflict of

---

[2] ERISA sets a special standard of care upon a plan LINA, namely, that LINA "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan. *See* 29 U.S.C. § 1104(a)(1). ERISA simultaneously underscores the particular importance of accurate claims processing by insisting that LINA's "provide a 'full and fair review' of claim denials." *See Firestone*, 489 U.S. at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting 29 U.S.C. § 1133(2)). ERISA also supplements marketplace and regulatory controls with judicial review of individual claim denials. *See* 29 U.S.C. § 1132(a)(1)(B); and, *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (2008).

interest and/or ERISA procedural violation which may have impacted or influenced LINA's decision to deny Plaintiff's claims.

36. With regard to whether Plaintiff meets the definitions of disability set forth in the STD Plan and LTD Policy, the Court should review the evidence in Plaintiff's claims *de novo* because even if the Court concludes the STD Plan and LTD Policy properly confer discretion to LINA, its unlawful violations of ERISA committed during the review of Plaintiff's claim as referenced herein are so flagrant they justify *de novo* review.

37. As a direct result of LINA's decision to deny Plaintiff's disability claims, she has been injured and suffered damages in the form of lost short and long term disability benefits in addition to other potential employee benefits including but not limited to, a waiver of any premiums due on a life insurance policy, company provided health insurance benefits (coverage), and company provided retirement, pension and/or 401k contributions.

38. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

39. Plaintiff is entitled to prejudgment interest pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for losses she incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order finding that Plaintiff meets the definition of disability set forth in the STD Plan and requiring Defendants to pay Plaintiff disability benefits and any other employee benefits she may be entitled to from the STD Plan, Company and/or LINA as a result of being found disabled pursuant to the STD Plan, from the date she was first denied these benefits through the date of judgment and prejudgment interest thereon;

B. For an Order finding that Plaintiff also meets the definition of disability set forth in the LTD Policy and requiring Defendants to pay Plaintiff disability benefits and

any other employee benefits she may be entitled to from the LTD Policy/Plan, Company and/or LINA as a result of being found disabled pursuant to the LTD Policy, from the date she was first denied these benefits through the date of judgment and prejudgment interest thereon;

  C. For an Order requiring Defendants to continue paying Plaintiff the aforementioned benefits until such time as she meets the conditions for termination of benefits;

  D. For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

  E. For such other and further relief as the Court deems just and proper.

DATED this 20th day of October, 2014.

SCOTT E. DAVIS. P.C.

By: */s/ Scott E. Davis*
   Scott E. Davis
   Attorney for Plaintiff